**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Steven Nickolas,<br><br>　　　　Plaintiff,<br><br>v.<br><br>Bank of New York Mellon, et al.,<br><br>　　　　Defendants. | No. CV-19-00166-PHX-DWL<br><br>**ORDER** |

## INTRODUCTION

This is at least the fourth lawsuit Plaintiff Steven Nickolas ("Nickolas") has filed over the last seven years in an attempt to prevent banks and financial institutions from foreclosing on his nearly million-dollar home. In this lawsuit, Nickolas alleges that (1) Defendants Bank of New York Mellon ("BoNYM") and Structured Asset Management Mortgage Investments II LLC ("SAMI") (together, "Defendants") have no interest in the note or deed of trust and therefore no right to sell the deed of trust; (2) the alleged beneficiaries of the deed of trust never owned the note, have been compensated, and are not owed any money in connection with Nickolas's property; and (3) the statute of limitations has run, barring foreclosure on Nickolas's property.

Now pending before the Court are four motions: (1) Defendants' motion to dismiss for failure to state a claim (Doc. 29); (2) Defendants' request for judicial notice in support of their motion to dismiss (Doc. 30); (3) Nickolas's "Rule 12(d) Motion To Treat Motion To Dismiss As Motion For Summary Judgment" (Doc. 38); and (4) Nickolas's motion for

summary judgment (Doc. 35 at 9-14). For the following reasons, the Court grants Defendants' motion to dismiss, grants Defendants' request for judicial notice as to the documents specified in this order, denies Nickolas's motion to treat the motion to dismiss as a motion for summary judgment, and denies Nickolas's motion for summary judgment.

**BACKGROUND**

I. Procedural History

Nickolas commenced this action by filing a complaint in Maricopa County Superior Court on December 19, 2018. (Doc. 1 ¶ 1; Doc. 1-3.) Nickolas filed an amended complaint on January 2, 2019. (Doc. 6-3 at 6-35; Doc. 6-4; Doc. 6-5 at 1-16.) Defendants removed the case to this Court on January 10, 2019. (Doc. 1.)

Defendants moved to dismiss the amended complaint on January 17, 2019. (Doc. 7.) Before the Court could rule on that motion, Nickolas filed a second amended complaint ("SAC"). (Doc. 26.)

The SAC alleges that Defendants noticed a trustee sale of the property for January 16, 2019. (Doc. 26 ¶ 3.) The SAC further alleges that, although the party named as bringing the sale of the deed of trust is BoNYM, BoNYM has no interest in the note or deed of trust and therefore no right to foreclose. (*Id.* ¶¶ 4-15.) The SAC also alleges that the certificate holders listed as the beneficiary for the deed of trust have no loss and have already been paid in a class-action suit. (*Id.*) Finally, the SAC alleges that the six-year statute of limitations for foreclosing on the property has run because the loan was accelerated in August 2009. (*Id.* ¶¶ 15-18.) Based on these allegations, the SAC seeks "a Declaration that Defendants can take no action to collect on the alleged debt, including [that they] cannot proceed with a trustee sale," as well as an injunction barring Defendants from attempting to conduct a trustee sale. (Doc. 26 at 6.)

On March 6, 2019, Defendants filed a motion to dismiss the SAC. (Doc. 29.) The motion seeks dismissal on the following three grounds: (1) Nickolas's note ownership claims are barred by claim preclusion; (2) Nickolas's note ownership claims lack merit; and (3) the statute of limitations has not run. (*Id.*)

II.  The 2017 Proceeding Between the Parties

BoNYM has asked the Court to take judicial notice of 35 documents for purposes of ruling on the motion to dismiss. (Doc. 30.)[1] Exhibits 31 through 33 are documents from a prior proceeding in this District between these same parties relating to Defendants' right to foreclose on Nickolas's property (Case No. 2:17-cv-01234-JJT) (the "2017 lawsuit"). That earlier case was filed in April 2017.

Nickolas objects only to Defendants' request for judicial notice of Exhibit 31, which is the complaint from his 2017 lawsuit. (Doc. 37.) He contends that "Defendant cites Exhibit 31 in support of its proposition that the Deed of Trust was assigned to BoNYM, which [he] dispute[s]," and provides three reasons for his objection: "(1) the facts are that the assignment never took place; (2) the best evidence of the assignment if it had occurred would have been a copy of the assignment; and (3) the prior pleading is not binding in this case under the above cited authority regarding judicial estoppel." (*Id.* at 2-3.)

The Court will overrule Nickolas's objection in part. Exhibit 31 is a document filed in an earlier federal lawsuit. Such documents are the proper subject of a request for judicial notice. *United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) ("[W]e 'may take notice of proceedings in other courts . . . within . . . the federal judicial system, if those proceedings have a direct relation to matters at issue.'") (citation omitted); *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) ("[Courts] may take judicial notice of court filings and other matters of public record."). The only limitation, at least at the motion-to-dismiss stage, is that the Court may not take judicial notice of any disputed facts contained within such records. *See, e.g.*, *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018); *Lee v. City of Los Angeles*, 250 F.3d 668, 688-90 (9th Cir. 2001). Thus, to the extent Nickolas disputes facts contained within Exhibit 31, the Court may not take judicial notice of them. It is, however, unclear why Nickolas refers to the "judicial estoppel" effect of Exhibit 31,

---

[1] The Court need not judicially notice all 35 documents because some are unnecessary for ruling on the motion to dismiss. The Court will address those that are necessary.

- 3 -

1 | when Defendants are asserting claim preclusion, not judicial estoppel. Nickolas provides no argument regarding why Exhibit 31 is irrelevant for claim preclusion purposes. Accordingly, the Court will take judicial notice of Exhibits 31 through 33 and the non-disputed facts within them.

**DISCUSSION**

As an initial matter, the Court will deny Nickolas's request to treat Defendants' motion to dismiss as a motion for summary judgment. (Doc. 35 at 8-9; *see also* Doc. 38 ["Plaintiff's Rule 12(d) Motion To Treat Motion To Dismiss As Motion For Summary Judgment"].) To the extent Nickolas is arguing that Defendants have engaged in conduct requiring their motion to dismiss to be converted into a summary judgment motion, he's incorrect. To be sure, the usual rule is that, if a district court considers evidence outside the pleadings when ruling on a motion to dismiss, it must convert the motion into a motion for summary judgment and give the nonmovant an opportunity to respond. *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003). "A court may, however, consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *Id.* at 908. Here, the documents being proffered by Defendants are subject to judicial notice, so conversion isn't necessary.

Meanwhile, to the extent Nickolas seeks conversion because he wishes to proffer new evidentiary material (which isn't mentioned in the complaint or subject to judicial notice) in opposition to Defendants' motion, that request will be denied. *Gerritsen v. Warner Bros. Ent. Inc.*, 112 F. Supp. 3d 1011, 1021 (C.D. Cal. 2015) ("Courts regularly decline to consider declarations and exhibits submitted in . . . opposition to a motion to dismiss . . . if they constitute evidence not referenced in the complaint or not a proper subject of judicial notice."). Accordingly, the Court will decline to consider the statement of facts and declaration attached to Nickolas's response to the motion to dismiss (Doc. 36).

…

…

I. Motion to Dismiss

    A. **Legal Standard**

"[T]o survive a motion to dismiss, a party must allege 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *In re Fitness Holdings Int'l, Inc.*, 714 F.3d 1141, 1144 (9th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Iqbal*, 556 U.S. at 678). "[A]ll well-pleaded allegations of material fact in the complaint are accepted as true and are construed in the light most favorable to the non-moving party." *Id.* at 1144-45 (citation omitted). However, the court need not accept legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 679-80. Moreover, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 679. The court also may dismiss due to "a lack of a cognizable legal theory." *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1065 (9th Cir. 2015) (citation omitted).

    B. **Analysis**

        1. Claim Preclusion

Defendants argue that this lawsuit, with the exception of the statute of limitations claim, is barred by claim preclusion. (Doc. 29 at 8-12.)

"Claim preclusion, often referred to as res judicata, bars any subsequent suit on claims that were raised or could have been raised in a prior action." *Cell Therapeutics, Inc. v. Lash Grp., Inc.*, 586 F.3d 1204, 1212 (9th Cir. 2009). "Under the doctrine of claim preclusion, a final judgment forecloses 'successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit.'" *Olivas-Motta v. Whitaker*, 910 F.3d 1271, 1279 (9th Cir. 2018) (citation omitted). Similarly, claim preclusion "bars all grounds for recovery which could have been asserted, whether they were or not, in a prior suit between the same parties on the same cause of action." *Clark v. Bear Stearns & Co.*, 966 F.2d 1318, 1320 (9th Cir. 1992). "Claim preclusion 'applies

when there is (1) an identity of claims; (2) a final judgment on the merits; and (3) identity or privity between the parties.'" *Cell Therapeutics*, 586 F.3d at 1212 (citation omitted).

### a. **Identity of Claims**

The court considers four factors to determine whether there is an identity of claims:

> (1) whether the two suits arise out of the same transactional nucleus of facts; (2) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (3) whether the two suits involve infringement of the same right; and (4) whether substantially the same evidence is presented in the two actions.

*ProShipLine Inc. v. Aspen Infrastructures Ltd.*, 609 F.3d 960, 968 (9th Cir. 2010) (citation omitted).

"Whether two suits arise out of the 'same transactional nucleus' depends upon 'whether they are related to the same set of facts and whether they could conveniently be tried together.'" *Id.* (citation omitted) (emphasis omitted).

The thrust of Nickolas's complaint in the 2017 lawsuit was that BoNYM didn't have the right to foreclose on his property. In his complaint in that lawsuit, among other allegations, Nickolas alleged:

▪ "[BoNYM] never received a timely or valid assignment of the Nickolas Note or Deed of Trust to the 2006-AR8 Trust." (Case No. 2:17-cv-01234-JJT, Doc. 1 ¶ 21 [Exhibit 31 to RJN].)

▪ "[T]he Deed of Trust moved without the Note attached . . . ." (*Id.* ¶ 23.)

▪ "[T]he Certificate holders were paid all of the monies owed to them under the Trust terms by [BoNYM], and therefore can demonstrate no damages based on any of the payments made by Mr. Nickolas . . . ." (*Id.* ¶ 43.)

Among other relief, Nickolas requested declaratory relief that BoNYM did not hold a right to enforce the deed of trust on the property and an injunction prohibiting BoNYM from enforcing any claim or interest in the deed of trust on the property. (*Id.* at 11-12)

In dismissing Nickolas's claim against BoNYM and SAMI, the court rejected these theories, concluding that (1) Nickolas did not have standing to challenge the securitization of his loan; (2) the argument that BoNYM was required to demonstrate it held the note

before initiating foreclosure proceedings failed as a matter of law; (3) the argument that securitization resulted in severance of the note and deed of trust, making them unenforceable, failed as a matter of law; and (4) a beneficiary under a deed of trust is not required to own the note, and "the judicially-noticed record show[ed] that MERS was the beneficiary with capacity to assign its interest to [BoNYM]." (Case No. 2:17-cv-01234-JJT, Doc. 32 at 5-7 [Exhibit 33].)

Given this backdrop, the Court easily concludes there is an identity of claims between this action and the 2017 lawsuit. First, both arise out of the same transactional nucleus of facts—both pertain to whether BoNYM lacks the authority to enforce the deed of trust and foreclose on the property. *See, e.g.*, *Inoue v. Bank of Am.*, 2015 WL 4498570, \*4 (N.D. Cal. 2015), *aff'd sub nom. Inoue v. Bank of Am., N.A.*, 692 F. App'x 818 (9th Cir. 2017) (finding identity of claims where, in both suits, "plaintiff allege[d] that defendants wrongfully foreclosed on the same loan on the same real property, and plaintiff raise[d] challenges to the validity of the assignment of the same deed of trust"); *Hall v. Mortgageit, Inc.*, 2012 WL 2921449, \*2 (D. Nev. 2012) (finding identity of claims where "[i]n each suit, Plaintiff challenge[d] the deed of trust, Defendants' authority to foreclose, chain of title, foreclosure under the deed of trust, the non judicial foreclosure and origination claims"); *Lai v. Quality Loan Serv. Corp.*, 2010 WL 3419179, \*4 (C.D. Cal. 2010) (finding identity of claims where "Plaintiff's claims, while sounding in different legal theories, are no more than an attack on the propriety of the foreclosure process"). Other than Nickolas's separate statute of limitations claim, Nickolas doesn't make any arguments in this action that he couldn't have made in the 2017 lawsuit.[2]

---

[2] For example, although Nickolas asserts he is relying on different theories in this lawsuit, he doesn't contend he was barred from raising those theories in the 2017 lawsuit. (Doc. 35 at 6 ["We are not alleging that BoNYM has a duty to 'show me the note'. Rather, we prove in Section I above that BoNYM, the party selling the note, has no interest in this note or deed of trust." (emphasis omitted)]; *id.* at 7 ["The [2017 lawsuit] involved a sale of a deed of trust on the assumption that the creditors had sustained a loss and were still owed the money. This case involves an entirely new transaction: the payment to the creditors by Bear Stearns."].) Nickolas also claims the 2017 lawsuit "concerned a notice of sale dated January 16, 2015," whereas this case "involves a notice of sale dated April 2, 2018, a different transaction." (*Id.*) The date of sale was not, however, relevant to the resolution of the 2017 lawsuit and is not relevant here.

Second, BoNYM's interests established in the 2017 lawsuit would be destroyed by prosecution of this action. Nickolas's argument to the contrary—that "the first action involved the rights of a purported creditor who claimed to be owed money and was entitled to be paid, whereas in this action it is alleged that the alleged creditor has been paid, has no loss, and therefore has no right to bring an action"—is unconvincing and, frankly, nonsensical. (Doc. 35 at 7-8.) In the 2017 lawsuit, BoNYM obtained a favorable ruling on its right to proceed with non-judicial foreclosure without having to prove its note ownership, interest in both the note and deed of trust, and proper securitization of the loan. Nickolas is attempting to relitigate those exact issues now. He cannot continue to bring the same claim at different times in front of different judges seeking a different ruling.

Third, both actions involve the same right—BoNYM's right to proceed with foreclosure of Nickolas's property.

Fourth, both actions involve substantially the same evidence. In the 2017 lawsuit, BoNYM requested judicial notice of 30 of the same documents of which it seeks judicial notice here.[3] Although Nickolas argues "the evidence to be presented in this case is entirely different than that in the first case," Nickolas does not contend there was any impediment to presenting the "entirely different" evidence he mentions—evidence "that the creditors were paid by Bear Stearns"—during the 2017 lawsuit. (*Id.* at 8.)

### b. **Final Judgment on the Merits**

Nickolas doesn't dispute that the dismissal with prejudice of his 2017 lawsuit constituted a final judgment on the merits. *Hells Canyon Pres. Council v. U.S. Forest Serv.*, 403 F.3d 683, 686 (9th Cir. 2005).

### c. **Identity or Privity Between the Parties**

Nickolas, BoNYM, and SAMI were parties in the 2017 lawsuit, and they are the same parties here. The court in the 2017 lawsuit dismissed with prejudice Nickolas's claims against both BoNYM and SAMI.

…

---

[3] The new documents are from subsequent lawsuits.

d. **Conclusion**

For the foregoing reasons, the Court dismisses with prejudice, on claim preclusion grounds, all of Nickolas's claims in this lawsuit except the statute of limitations claim.

2. Statute of Limitations

a. **Background**

The SAC alleges that Recon Trust Company recorded a notice of trustee sale on August 27, 2009, under which Countrywide Bank N.A., the originator of the note, accelerated the balance of the note. (Doc. 26 ¶¶ 15-16.) The SAC further alleges that acceleration on the note "continued continuously from 2009 to date," causing the six-year statute of limitations to expire on January 27, 2017 (accounting for 521 days of tolling for bankruptcy). (*Id.* ¶ 18.)

Defendants ask the Court to take judicial notice of the relevant Notice of Trustee's Sale dated August 27, 2009 and recorded August 31, 2009 (Exhibit 4), the Cancellation of Notice of Sale dated January 5, 2010 and recorded January 12, 2010 (Exhibit 5), and a loan modification agreement made on December 15, 2009 and recorded on March 9, 2011 (Exhibit 6). (Doc. 30 at 2-3.) Nickolas didn't raise any objection to these particular documents in his response to Defendants' request for judicial notice (Doc. 37), and courts regularly take judicial notice of these sorts of documents. *See, e.g., Jacobsen v. HSBC Bank USA, N.A.*, 713 Fed. App'x 679, 680 (9th Cir. 2018) ("The district court did not abuse its discretion by taking judicial notice of the title documents."); *Griffin v. Green Tree Servicing, LLC*, 166 F. Supp. 3d 1030, 1040 (C.D. Cal. 2015) (taking judicial notice of documents "that concern the chain of title on [plaintiff's] mortgage" and summarizing cases that similarly took judicial notice of title documents). Accordingly, the Court will take judicial notice of Exhibits 4, 5, and 6 and the non-disputed facts within them.

Defendants also ask the Court to take judicial notice of 20 documents from various court proceedings involving Nickolas, as follows:

▪ Exhibits 14 to 26 are from Nickolas's first lawsuit aimed at stopping foreclosure on his home (Case No. 2:12-cv-01922-ROS) (the "2012 lawsuit"). Nickolas filed that suit

in Maricopa County Superior Court on June 28, 2012. (Doc. 30-1 at 67-144 [Exhibit 15].) The defendants in that case—Structured Asset Mortgage Investments II Trust 2006-AR8, Mortgage Pass-Through Certificates, Series 2006-AR; MERS; BAC Home Loans Servicing, LP; Bank of America, National Association—removed it to the District of Arizona. (*Id.* at 56-65 [Exhibit 14].) In the third amended complaint in that suit, Nickolas brought several claims relating to the note and deed of trust on his property. (Doc. 30-2 at 154-174; Doc. 30-3 at 1-17 [Exhibit 22].) In March 2015, the parties stipulated to dismiss that case with prejudice. (Doc. 30-3 at 123-124 [Exhibit 25].) The court approved the stipulation. (*Id.* at 126 [Exhibit 26].)

▪ Exhibit 28 is from Nickolas's chapter 13 bankruptcy case (Case No. 2:15-bk-09321) that was filed on July 24, 2015. Nickolas was dismissed as debtor on December 28, 2016, and the case was terminated on April 20, 2017.

▪ Exhibits 29 and 30 are from the adversary proceeding in the chapter 13 bankruptcy case (No. 2:16-ap-00060-BKM) Nickolas filed on February 2, 2016, in which Nickolas alleged the recorded assignments were wrongful and therefore BoNYM could not foreclose on the property. That case was dismissed on December 28, 2016.

▪ Exhibits 34 and 35 are from Nickolas's chapter 11 bankruptcy case (Case No. 2:18-bk-09406-PS) that was filed on August 6, 2018. Nickolas was dismissed as debtor on January 10, 2019.

As noted, the Court may take judicial notice of documents filed in other court proceedings. *Robinson Rancheria Citizens Council,* 971 F.2d at 248; *Reyn's Pasta Bella, LLC,* 442 F.3d at 746 n.6. Additionally, Nickolas didn't raise any objection to these particular documents in his response to Defendants' request for judicial notice. (Doc. 37). Accordingly, the Court will take judicial notice of Exhibits 4-6, 14-26, 28-30, and 34-35 and the non-disputed facts within them.

b. **Parties' Arguments**

Defendants argue Nickolas's statute of limitations claim fails on two grounds: (1) "[a]ssuming, *arguendo*, the 2009 notice of sale accelerated the debt, the debt was

decelerated when Mr. Nickolas modified the loan on December 15, 2009"; and (2) even if the loan hadn't been decelerated, the limitations period was tolled for "over 6 years" due to Nickolas's intervening bankruptcy proceedings and civil lawsuits. (Doc. 29 at 14-16.)

In response, Nickolas argues the loan modification agreement was ineffective. (Doc. 35 at 4-5.)

c. **Legal Standard**

A six-year limitations period applies where a party "is attempting to collect on a property interest secured by a Deed of Trust." *Andra R Miller Designs LLC v. US Bank NA*, 418 P.3d 1038, 1042 (Ariz. Ct. App. 2018); *see also* A.R.S. § 12-548(A)(1).

"When a creditor has the power to accelerate a debt, the six-year statute of limitations begins to run on the date the creditor exercises that power." *Andra R Miller Designs LLC*, 418 P.3d at 1043. To accelerate a debt, the creditor must take some affirmative action making it clear it has accelerated the obligation. *Id.* Sufficient actions include "[d]emand of a full payment before all installments fall due" and "[t]he commencement of foreclosure." *Id.*

Revocation of acceleration can occur in several ways, including: (1) a creditor unilaterally revoking acceleration; (2) "[p]arties . . . negotiat[ing] a modification or a forbearance agreement"; or (3) "the debtor . . . reinstat[ing] the loan by curing defaults pursuant to [A.R.S.] § 33-813(A) and (B)." *Id.* at 1044, 1044 n.3.

Additionally, a debtor's bankruptcy filing tolls the statute of limitations. The Ninth Circuit has held that "[t]he filing of a petition for bankruptcy operates as an automatic stay of the commencement or continuation of any action against a bankrupt debtor or against the property of a bankrupt estate. The automatic stay tolls 'applicable nonbankruptcy law [that] fixes a period for commencing or continuing a civil action in a court other than a bankruptcy court on a claim against the debtor' or against the property of the debtor." *United States v. Dos Cabezas Corp.*, 995 F.2d 1486, 1491 (9th Cir. 1993) (citing 11 U.S.C. §§ 108(c), 362(a)); *see also In re Smith*, 101 P.3d 637, 639 (Ariz. 2004) ("Under Arizona law, enforcement is stayed and the time in which to enforce the judgment is tolled during

the pendency of bankruptcy actions . . . ."). A court in this District has interpreted Arizona law and the bankruptcy code to require tolling of the statute of limitations in a foreclosure case between when a bankruptcy action is filed and the stay is lifted. *Mlynarczyk v. Wilmington Sav. Fund Soc'y FSB*, 2016 WL 3524329, *4-5 (D. Ariz. 2016); *see also In re Va Bene Trist, LLC*, 2017 WL 4862743, *3-4 (Bankr. D. Ariz. 2017).

### d. **Analysis**

Here, Defendants do not challenge the SAC's allegation that the loan was accelerated, so the Court will assume for purposes of this order that the notice of trustee sale issued on August 27, 2009 accelerated the debt and caused the limitations period to begin to run.

Defendants argue the loan modification on December 15, 2009 revoked the acceleration of the debt. The Court agrees. As noted, Arizona law recognizes "that acceleration of the debt can be revoked" by "a modification or a forbearance agreement." *Andra R Miller Designs LLC*, 418 P.3d at 1044 & 1044 n.3; *see also Steinberger v. Ocwen Loan Servicing, LLC*, 739 Fed. App'x 881, 882-83 & n.1 (9th Cir. 2018) (affirming grant of summary judgment to bank, in lawsuit brought by an Arizona homeowner seeking a declaration that the six-year statute of limitations for initiating foreclosure had expired, because the homeowner had entered into a forbearance agreement). Here, the Court has taken judicial notice of Nickolas's loan modification agreement, which he executed in December 2009 and which was recorded in March 2011. (Doc. 30-1 at 32-33.) This agreement had the effect of revoking the August 2009 acceleration.

It should be noted that Nickolas seems to dispute the validity of the loan modification agreement (even though he didn't object to Defendants' request to take judicial notice of it). Specifically, Nickolas argues the agreement was "not effective" because his counterparty under the agreement, BAC Home Servicing, LP, was "a servicing agent for Bank of America" and Bank of America recorded a moot assignment in 2013. (Doc. 35 at 4-5.) He further argues that BoNYM implicitly admitted in 2014 (by filing a notice of substitute trustee) that Bank of America "had no interest" in the property. (*Id.*)

This argument lacks merit. Nickolas does not explain why an allegedly invalid assignment in 2013 renders invalid a loan modification agreement executed four years earlier. Although a legitimate dispute over the validity of a loan modification agreement could cut against ruling in Defendants' favor at the motion-to-dismiss stage, the plaintiff must at least present a logical argument as to the agreement's invalidity. The Court also notes that Nickolas admitted, during his 2012 lawsuit seeking to stave off foreclosure, that he entered into the 2009 loan modification agreement and made payments under it. (Exhibit 22 to RJN, Doc. 30-2 at 157 [Nickolas's third amended complaint in the 2012 lawsuit, asserting that "[i]n December 2009, Nickolas signed a loan modification that changed the Note from adjustable rate to a fixed rate of 4%. Though Nickolas signed the modification in 2009, BAC did not sign or notarize it until January 24, 2011. Nickolas made payments under this plan for several months, until approximately 2010."].)[4]

For this reason, the Court need not resolve Defendants' alternative statute-of-limitations theory—that Nickolas's various bankruptcy proceedings and civil lawsuits tolled the statute of limitations. It should be noted, however, that Defendants appear to be mistaken in contending that the civil lawsuits tolled the statute of limitations. Although the two cases they cite, *City of Tucson v. Clear Channel Outdoor, Inc.*, 105 P.3d 1163, 1167 (Ariz. 2005), and *Murphey v. Valenzuela*, 386 P.2d 78, 80 (Ariz. 1963), generally hold that commencement of a suit tolls the statute of limitations, these cases are referring to the statute of limitations for the plaintiff's claims, not the statute of limitations for claims the defendant could bring against the plaintiff. Defendants have cited no cases, and the Court is aware of none, holding that lawsuits that a borrower brings related to his debt toll the statute of limitations for actions that the lender could bring to collect on that borrower's debt. In fact, the Court's limited research suggests that Arizona law does not permit tolling in this circumstance. *See, e.g.*, *Arizona Dep't of Water Resources v. Rail N Ranch Corp.*,

---

[4] Additionally, the judge presiding over the 2012 lawsuit adopted Nickolas's representations concerning the loan modification agreement in subsequent orders. (Exhibit 24 to RJN, Doc. 30-3 at 118 ["In 2009, Plaintiff 'signed a loan modification' with a BANA predecessor or related entity. Plaintiff made payments under the modification until 2010."].)

752 P.2d 16, 17 (Ariz. Ct. App. 1987) ("Nor do we believe that the statute of limitations [for pursuing foreclosure] was tolled because the constitutionality of the statute creating a lien was attacked in the earlier action. . . . Nothing in the earlier action in this case prevented a timely foreclosure claim. Indeed, it appears that foreclosure should have been sought by way of compulsory counterclaim in that action. To allow the Department not to foreclose until an earlier action is resolved is simply to invite both delay and the multiplicity of litigation that the rules of procedure and statutes of limitation were designed to prevent."); *Duhammel v. Star*, 653 P.2d 15, 16 (Ariz. Ct. App. 1982) (rejecting the notion that "the filing of a complaint tolls the statute of limitations regarding a counterclaim that is brought after the applicable time period has expired").

### 3. Type of Dismissal

"Normally, when a viable case may be pled, a district court should freely grant leave to amend." *United States ex rel. Cafasso v. Gen. Dynamics C4 Sys.*, 637 F.3d 1047, 1058 (9th Cir. 2011). "However, liberality in granting leave to amend is subject to several limitations." *Id.* (citation and internal quotation marks omitted). "Those limitations include undue prejudice to the opposing party, bad faith by the movant, futility, and undue delay." *Id.* A district court also enjoys broad discretion to deny leave to amend if a plaintiff has previously amended the complaint. *Id.*

Here, the complaint being dismissed isn't Nickolas's first attempt to craft a viable complaint—it's his second amended complaint. The Court also harbors some concern that Nickolas's pursuit of this action—in particular, his attempt to relitigate many of the same issues that were resolved against him in the 2017 lawsuit—smacks of bad faith. Finally, any attempt to cure the deficiencies in this order would be futile. For all of these reasons, dismissal with prejudice is appropriate here.

## II. Nickolas's Motion for Summary Judgment

Nickolas moved for summary judgment separate from his request to treat the motion to dismiss as a motion for summary judgment. (Doc. 35 at 9-14.) Because the Court grants Defendants' motion to dismiss, it will deny Nickolas's motion as moot.

Accordingly, **IT IS ORDERED** that:

(1) Defendants' motion to dismiss (Doc. 29) is **granted**;

(2) Defendants' request for judicial notice (Doc. 30) is **granted** as to the documents specified in this order;

(3) Nickolas's "Rule 12(d) Motion To Treat Motion To Dismiss As Motion For Summary Judgment" (Doc. 38) is **denied**;

(4) Nickolas's motion for summary judgment (Doc. 35 at 9-14) is **denied**; and

(5) The Second Amended Complaint is dismissed with prejudice. The Clerk of Court shall enter judgment accordingly.

Dated this 3rd day of May, 2019.

Dominic W. Lanza
United States District Judge